IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



UNITED STATES OF AMERICA

v.   Criminal No. 3:18-cr-44

TIMOTHY A. WARD,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT TIMOTHY A. WARD'S OBJECTION TO PRESENTENCE INVESTIGATION REPORT. Ward objects to the application of U.S.S.G. § 4B1.1(b), an enhancement pursuant to the career-offender provision of the Guidelines, in his Presentence Report ("PSR"). Ward contends that two of his prior Virginia drug convictions do not qualify as "controlled substance offenses" under the Guidelines, with the result that the provision cannot be applied to enhance his Guidelines sentence. Specifically, Ward alleges that the phrase "controlled substance" used in the Guidelines refers only to substances on the federal drug schedules, and he states that the Virginia schedule includes one substance (out of over 100) not included in the federal schedule. According to Ward, his two prior convictions under Virginia law—both for possession of heroin with intent to

distribute—do not qualify as "controlled substance" offenses under the Guidelines.

For the reasons set out below and on the record, the objection was overruled during Ward's sentencing hearing.

## BACKGROUND

A confidential source purchased 0.1645 grams of cocaine from Ward. Afterward, Ward was charged with knowingly, intentionally, and unlawfully distributing a mixture and substance containing a detectable amount of cocaine—a Schedule II controlled substance—in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

This was not Ward's first time distributing drugs. In 2001, he was convicted in federal court of distributing 17.7 grams of cocaine base, for which he served a sentence of 84 months imprisonment. He was released in June 2008, but soon was back in prison for violating his supervised release.

After serving the sentence for violation of supervised release, Ward was arrested for, and later convicted of, two counts of possessing heroin with intent to distribute it—on two different occasions—in violation of Va. Code § 18.2-248. Specifically, Ward was first found with heroin early in the morning on June 21, 2010, when officers arrested him outside a club carrying 6 grams of the substance. Then, on August 25, 2010, Ward was found with more heroin (3 grams, to be exact) when he was arrested on that date.

2

On January 24, 2011, Ward was sentenced on the June 21 charges to ten years imprisonment with seven years and ten months suspended. On the second charge, Ward was sentenced to ten years imprisonment with six years and nine months suspended. The sentences were to run concurrently. Thus, in total, Ward has three prior drug possession convictions in addition to the distribution-of-cocaine charge in this case.

## DISCUSSION

Ward objects to the PSR's calculation of his sentence, arguing that his two prior Virginia drug convictions from 2011 are not "controlled substance offenses" as contemplated by the Guidelines. ECF No. 25.[1] Ward takes the view that a categorical approach requires state statutes that regulate "controlled substances" to regulate only the substances that are also listed in the federal drug schedules. Id. (citing United States v. Townsend, 897 F.3d 66 (2d. Cir. 2018); United States v. Gomez-Alvarez, 781 F.3d 787, 793-94 (5th Cir. 2015); United States v. Leal-Vega, 680 F.3d 1160, 1166-67 (9th Cir. 2012); United States v. Sanchez-Garcia, 642 F.3d 658, 661 (8th Cir. 2011)). The Virginia law applicable here

---

[1] As the Government notes, Ward does not contest that his federal conviction from 2001 is a "controlled substance offense," ECF No. 29, so only one other conviction is necessary for the enhancement to apply. See U.S.S.G. § 4B1.1. But, because both convictions fall under the same Virginia statute, the Court must determine whether convictions under that statute are covered by the Guidelines.

3

includes at least one substance, out of over 100, that is not included on the federal schedule: Salvinorin A. See Va. Code Ann. § 18.2-248; Va. Code § 54.1-3446(3). Consequently, a conviction under § 18.2-248 could be based on a substance that is not covered in the federal schedules. According to Ward, under a categorical approach, this possibility makes an offense under that statute broader than the generic controlled substance offense in Section 4B1.2(b). Thus, in Ward's view, a violation of § 18.2-248 cannot count as a prior controlled substance offense under a categorical approach. ECF No. 25.

For the reasons set out in the record and as discussed more fully below, that argument lacks merit.

## I. Legal Background

The Court uses a categorical approach when "the enumerated generic offense is a traditional, common-law crime." United States v. Alfaro, 835 F.3d 470, 474 (4th Cir. 2016). A categorical approach "considers 'how the law defines the offense,' not 'how an individual offender might have committed it on a particular occasion.'" United States v. Thompson, 874 F.3d 412, 417 (4th Cir. 2017) (quoting Begay v. United States, 553 U.S. 137, 141 (2008)). That is done under the guidelines "based on how the offense is defined 'in the criminal codes of most states.'" United

States v. Peterson, 629 F.3d 432, 436 (4th Cir. 2011) (quoting Taylor v. United States, 495 U.S. 575, 598 (1990)).[2]

But the Court does not need to use a categorical approach when the Guidelines phrase "does not describe a traditional common-law crime, and the phrase thus does not invoke an established, generic structure." Alfaro, 835 F.3d at 474. In those cases, the Court, "instead look[s] to the plain, ordinary meaning of the language used by the Guidelines." Id.

This case fits the latter approach, because a "controlled substance offense" is not a traditional, common-law crime.

II. Convictions Under Va. Code § 18.2-248 Qualify as "Controlled Substance Offenses" as Defined by U.S.S.G. § 4B1.2(b)

In full, U.S.S.G. 4B1.2(b) says,

The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or counterfeit substance) or the possession of a controlled substance (or counterfeit

---

[2] Further, a modified categorical approach is used only if the prior state conviction rests on a statute that "contains divisible categories of proscribed conduct, at least one of which constitutes—by its elements—a violent felony." Id. at 417 n.4 (quoting United States v. Gomez, 690 F.3d 194, 199 (4th Cir. 2012)). Under a modified categorical approach, "a court may examine a limited universe of documents relevant to the underlying conviction for the sole purpose of determining which part of the statute the defendant violated." Id.
But, as discussed below, based on the interpretation of § 18.2-248 set out herein, there is no need to address whether § 18.2-248 is divisible under a modified categorical approach.

5

> substance) with intent to manufacture, import, export, distribute, or dispense.

Id. (emphasis added). The ordinary meaning of "controlled substance" is "any type of drug whose possession and use is regulated by law." Controlled Substance, Black's Law Dictionary (10th ed. 2014).

Ward's state convictions were under § 18.2-248, which makes it unlawful "for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance." Va. Code § 18.2-248(A). That statute also sets penalties for "any person who violates this section with respect to a controlled substance classified in Schedule I or II." Id. § 18.2-248(C). "Schedule I or II," in turn, "refer[s] to those terms as they are used or defined in the Drug Control Act (§ 54.1-3400 et seq.)." Id. § 18.2-247(A). The substances listed in those two schedules are largely the same as those listed in the corresponding federal schedules. Compare Va. Code § 54.1-3446, with 21 C.F.R. § 1308.11 (Schedule I); compare Va. Code § 54.1-3448, with 21 C.F.R. § 1308.12 (Schedule II). All the substances listed in Virginia Schedule II are also listed in the federal Schedule II. However, Virginia Schedule I includes one substance, Salvinorin A, that is not listed in any federal schedule. See Va. Code § 54.1-

3446(3). Thus, Ward reasons that his prior state convictions should not count for purposes of the Guidelines.

The Fourth Circuit recently considered this question in its unpublished opinion in United States v. Pritchett, 733 F. App'x 128 (2018) (per curiam) (unpublished). There, the Court of Appeals held that the defendant's conviction for possession of cocaine with intent to distribute in violation of Va. Code Ann. § 18.2-248 (the same statute challenged in this case) was a controlled substance offense. Pritchett, 733 F. App'x at 130. In Pritchett, the Court of Appeals, however, did not explicitly hold whether the statute was unambiguous or whether it applied either a categorical approach or a modified categorical approach. Instead, the Fourth Circuit relied on its previous published decision in United States v. Mills, 485 F.3d 219 (4th Cir. 2007), wherein the issue was whether a defendant's prior simulated drug conviction was a "counterfeit substance" offense and thus a "controlled substance offense" within the meaning of the Guidelines. Id. at 220. Concluding that, even though Virginia's "counterfeit substance" statute defined the punishable substances more broadly than the definition of "counterfeit substance" in the Controlled Substances Act ("CSA"), the Fourth Circuit held, in Mills, that convictions under the Virginia statute were nonetheless "controlled substance offenses." Id. at 222-23. It

did so for two reasons. First, the Court found that the Guidelines provision—U.S.S.G. § 4B1.2(b)—did not contain any references to the CSA, which was notable given the frequency of cross-references to other guidelines and statutes throughout the guidelines. See id. at 223. And, the Court concluded that it could not presume that this omission was inadvertent. Id. Second, the Court found that the plain meaning of "counterfeit" included substances that were "made in imitation of" controlled substances and that applying the federal definition of "counterfeit substance" would, in effect, "read the word 'state' out of Section 4B1.2." Id. at 222-24.

Without explanation, Ward urges that Pritchett and Mills should be ignored and argues instead to apply the Second Circuit's recent published decision in United States v. Townsend. There, a defendant pleaded guilty to possessing a controlled substance, alprazolam, with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(2). 897 F.3d at 68. His PSR determined that an enhancement applied to the defendant because of two prior convictions. Id. One of those was a felony conviction for possession of a controlled substance under New York law. Id. The New York statute prohibited Human Chorionic Gonadotropin, which, like Salvinorin A, is not on the federal schedule. Id. The Second Circuit held that a "controlled substance" included only

drugs on the federal drug schedule. Id. The Second Circuit did so because it found that the Guidelines were ambiguous, id. at 70-71, and took the view that U.S.S.G. § 4B1.2(b) would clarify that the controlled substance could be under either federal or state law if the Commission wanted both to be covered by the enhancement. Id. In its view, the Jerome presumption—which is that "the application of a federal law does not depend on state law unless Congress plainly indicates otherwise," id. at 71 (citing Jerome v. United States, 318 U.S. 101, 104 (1943))—applies to the Guidelines, meaning that they should be read narrowly with a presumption that federal standards alone apply. Id. The decision in Townsend is not persuasive.

Considering that the Fourth Circuit has held that a cocaine possession offense under Va. Code Ann. § 18.2-248 was a controlled substance offense, and considering the plain language of U.S.S.G. § 4B1.2(b), the Court finds that § 4B1.2(b) unambiguously covers Ward's two prior state convictions. Applying the principles set out in Mills, the Court finds that U.S.S.G. § 4B1.2(b) is not limited to 21 U.S.C. § 802(6)'s definition of controlled substance. First, § 4B1.2(b) does not cross reference § 802(6), which is important "because the Sentencing Commission clearly knows how to cross-reference when it wants to. . . . The Sentencing Guidelines are a veritable maze of interlocking sections and statutory cross-

references." Mills, 485 F.3d at 223. If Congress wished to define "controlled substance" in reference to a limited technical term, it would include a cross-reference to § 802(6). See id. at 224.

Second, "[i]t is a cornerstone of statutory interpretation that an undefined term is construed 'in accordance with its ordinary or natural meaning.'" See id. at 220. And the ordinary meaning of "controlled substance" is "any type of drug whose possession and use is regulated by law." Controlled Substance, Black's Law Dictionary (10th ed. 2014). Virginia's law clearly satisfies this definition. See Va. Code Ann. § 18.2-248(A) ("[I]t shall be unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance.").

Third, the plain text of the Guideline supports applying state controlled-substance convictions. Section 4B1.2(b) refers to "an offense under federal or state law," indicating that a "controlled substance" is one controlled by either a state or the United States. Id. (emphasis added). So, applying the federal definition of "controlled substance" here would, in effect, "read the word 'state' out of Section 4B1.2." Mills, 485 F.3d at 224.

10

Moreover, the categorical-approach precedent from the Supreme Court does not support Ward's interpretation. The Supreme Court has applied the categorical approach partially because it believes the text of Congress's statutes supports that approach. See Mathis v. United States, 136 S. Ct. 2243, 2252 (2016) (stating that the Court applies an "elements-only" categorical approach because "[the Armed Career Criminal Act's] text favors that approach" and because "Congress chose" that course); Johnson v. United States, 135 S. Ct. 2551, 2562 (2015) (focusing on Congress's intentions and stating that the "'only plausible interpretation' of the law . . . requires use of the categorical approach" (quoting Taylor, 495 U.S. at 602). Here, the text supports finding that convictions for controlled substance offenses under either state or federal law should apply to the enhancement. See U.S.S.G. 4B1.2(b) ("The term 'controlled substance offense' means an offense under federal or state law . . . .").

And, doing as Ward urges would be inconsistent with the Fourth Circuit's decision in Mills: Section 4B1.2 contains the "controlled substance" provision at issue here right next to the "counterfeit substance" provision at issue in Mills. Both should be interpreted the same way, because it is hard to imagine that the Sentencing Commission intended the two to be interpreted differently when placing them within the same paragraph and using

them interchangeably. Thus, the Court here follows Mills' holding that "the Sentencing Commission, by specifying that federal <u>and</u> state violations serve as predicate offenses for career-offender status, clearly intended for repeat offenders of <u>both</u> state and federal counterfeit crimes to be subject to an enhanced sentence." 485 F.3d at 224 (emphasis in original).

Fourth, the Court notes that federal law differentiates between a "serious drug offense" and a "controlled substance offense." A "serious drug offense" is defined as either:

> (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or
>
> (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, <u>a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))</u>, for which a maximum term of imprisonment of ten years or more is prescribed by law.

18 U.S.C. § 924(e)(2)(A) (emphasis added). If the state convictions that qualify as "serious drug offenses" are supposed to be different than those that qualify as "controlled substances offenses" under Section 4B1.2(b), the only apparent distinction implied by § 924's language is that the former must be based on

12

the federal controlled substances schedules while the latter do not.

Finally, as the Government notes, Ward's interpretation of § 4B1.2(b) would lead to absurd results: if a state recognized a new drug before federal authorities did, then every state drug conviction in the interim—including those convictions for heroin, cocaine, methamphetamine, and other drugs clearly prohibited under both state and federal law—would be excluded from counting as a "controlled substance offense" so long as the federal and state schedules were not exactly the same.[3]

---

[3] Ward further argues that § 18.2-248 is overbroad because (1) there should be a mens rea requirement that a defendant must know that he has a substance that violates the federal schedules, and (2) Virginia's aiding-and-abetting liability goes further than federal liability by allowing a defendant to be convicted even if he merely approved of a crime and was present during its commission. ECF No. 25.
  Ward's mens rea argument is meritless, because both the Virginia statute and the federal statute require only that the defendant knowingly carried a controlled substance that violated their respective schedules. There is no requirement in § 4B1.2(b) that limits the mens rea for state drug offenses to knowledge of the federal schedules.
  Ward's aiding-and-abetting argument—that "Virginia's aiding and abetting liability is overbroad and indivisible," ECF No. 25—similarly fails, because there is no case law to support that Virginia has a different standard of aiding-and-abetting liability than the federal standard. Generic aiding and abetting has two aspects. First, the defendant must have the "'specific intent to facilitate the commission of a crime by someone else.'" United States v. Valdivia-Flores, 876 F.3d 1201, 1207 (9th Cir. 2017) (emphasis in original) (quoting United States v. Garcia, 400 F.3d 816, 819 (9th Cir. 2005)). Second, the aider and abettor must render some assistance to the principal "'by words, acts, encouragement, support, or presence.'" United States v. Cammorto,

13

**CONCLUSION**

For the foregoing reasons and those set forth on the record at sentencing, DEFENDANT TIMOTHY A. WARD'S OBJECTION TO PRESENTENCE INVESTIGATION REPORT was overruled during Ward's sentencing hearing.

The Clerk is directed to send a copy of this Memorandum Opinion to the Clerk of the United States Court of Appeals for the Fourth Circuit.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: December 6, 2018

---

859 F.3d 311, 317 (4th Cir. 2017) (emphasis in original) (quoting Rosemond v. United States, 572 U.S. 1240, 1246 (2014)). Virginia's interpretation of accomplice liability is consistent with this formulation. See Thomas v. Commonwealth, 688 S.E.2d 220, 235 (Va. 2010)(stating that the aider and abettor must commit "some overt act done knowingly in furtherance of the commission of the crime" or "share[] in the criminal intent of the principal committing the crime" and that an accomplice must "encourag[e], incit[e], or in some manner offer[] aid in the commission of the crime," including by being "present lending countenance").

14